ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
ROBERT W. SPENCER (SBN 238491)
rspencer@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

Attorneys for Plaintiffs
FRANK SICA and GARY ELLIS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK SICA and GARY ELLIS, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONSTRUCTION & TURNAROUND SERVICES, L.L.C.; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No: 4:21-cv-0188-JSW<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   January 7, 2022<br>Time:   9:00 a.m.<br>Ctrm:   5<br>Judge:   Jeffrey S. White<br><br>Complaint Filed:   October 20, 2020<br>Removal Date:   January 8, 2021<br>FAC filed:   January 27, 2021 |

**PLEASE TAKE NOTICE THAT** on January 7, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Jeffrey S. White, located at 1301 Clay Street, Courtroom 5, 2nd Floor, Oakland, California, Plaintiffs FRANK SICA and GARY ELLIS will and hereby do move for an Order granting final approval of the class action settlement reached between Plaintiffs and Construction & Turnaround Services, L.L.C. ("Defendant"). Specifically, Plaintiffs move for an order: 1) confirming the Court's previous findings that the class certification requirements, for settlement purposes, are satisfied; 2) finding that the settlement is fair, reasonable and adequate; 3) finally approving the settlement; 4) finding that proper notice of the settlement was given; 5) directing distribution of settlement benefits; 6) dismissing Plaintiffs' claims with prejudice; 7) binding Class Members who did not timely exclude themselves from the settlement to the release of claims in favor of Defendant as set forth in the settlement agreement; 8) barring Class Members who did not timely object to the settlement or exclude themselves from the settlement from prosecuting or pursuing any appeal of the Court's order (to the extent permitted by law); 9) direct that the clerk of the Court enter the Court's order as a final judgment; and 10) without affecting the finality of the final judgment, reserve continuing jurisdiction over the parties for the purposes of implementing, enforcing and/or administering the settlement.

This Motion is made pursuant to Federal Rule of Civil Procedure 23, which requires court approval of the settlement of a class action. This Motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities set forth herein, the parties' Joint Stipulation of Class Action Settlement and Release of Claims, the Declarations of Eric A. Grover and Scot D. Bernstein, the Declaration of Taylor Mitzner of Phoenix Settlement Administrators, the pleadings and papers filed in this case, and such evidence or oral argument as may be presented at the hearing.

Dated: October 18, 2021     KELLER GROVER LLP

By:  /s/ *Eric A. Grover*

ERIC A. GROVER
ROBERT SPENCER
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. BACKGROUND | 2 |
|    A. Factual Background and Procedural History | 2 |
|    B. The Settlement Process | 2 |
|    C. Preliminary Approval, the Notice Process, and Class Members' Responses | 3 |
| III. THE TERMS OF THE SETTLEMENT AGREEMENT | 4 |
|    A. The Settlement Benefits | 4 |
|    B. Payments to Settlement Class Members | 5 |
|    C. Cy Pres Distribution | 5 |
|    D. Limited Release Applicable to Settlement Class Members | 5 |
|    E. The General Releases by Plaintiffs Sica and Ellis | 6 |
| IV. LEGAL ARGUMENT | 6 |
|    A. The Notice was the Best Practicable Notice Under the Circumstances | 7 |
|    B. The Settlement is Fair, Reasonable, and Adequate | 8 |
|       1. The strength of Plaintiffs' case supports final approval. | 8 |
|       2. The complexity, expense and likely duration of continued litigation weighs in favor of final approval. | 9 |
|       3. The value of the settlement favors final approval. | 10 |
|       4. Disclosure of documents and data demonstrating the strengths and weaknesses of this action was completed prior to entering into the settlement. | 10 |
|       5. The experience and views of Class Counsel favor final approval. | 11 |
|       6. Class Members' positive reaction favors final approval. | 12 |
|       7. None of the *Bluetooth* signs of collusion are present. | 12 |
|       8. The settlement has no obvious deficiencies. | 13 |
|    C. The Settlement Class Meets the Rule 23 Class Certification Requirements | 14 |
| V. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Federal Cases**                                               **Page(s)**

*Ahmed v. HSBC Bank USA*,
    2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) .......................................... 14

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ............................................................................... 7, 12, 13

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ......................................................................................... 6

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................. 7, 8, 12

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................. 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................................... 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................. 6, 11

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .......................................................................................... 6

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 1, 7, 12

*Miguel-Sanchez v. Mesa Packing, LLC*,
    2021 U.S. Dist. LEXIS 84437 (N.D. Cal. May 3, 2021) ................................................ 7

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
    2021 U.S. Dist. LEXIS 172633 (N.D. Cal. Sep. 10, 2021) ...................................... 1, 12

*Morrison v. Am. Nat'l Red Cross*,
    2020 U.S. Dist. LEXIS 132712 (N.D. Cal. July 27, 2020) ............................................. 5

*Morrison v. Am. Nat'l Red Cross, ("Morrison II")*
    2021 U.S. Dist. LEXIS 4043 (N.D. Cal. Jan. 8, 2021) .......................................... 6, 12, 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ....................................................................................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 11

*Officers for Justice*,
    |688 F.2d 615 (9th Cir. 1982) ....................................................................................... 11

*Perez v. CVS Health Corp.*,
    2021 U.S. Dist. LEXIS 110216 (E.D. Cal. June 11, 2021) ........................................... 12

*Perks v. ActiveHours, Inc.*,
    2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ............................................ 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................................... 7

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................................. 14

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
    906 F.3d 747 (9th Cir. 2018) .................................................................................................... 5

*Satchell v. Fed. Exp. Corp.*,
    2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ..................................................... 11

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) .................................................................................................... 7

*Taafua v. Quantum Glob. Techs., LLC*,
    2021 U.S. Dist. LEXIS 28754 (N.D. Cal. Feb. 16, 2021) ..................................................... 11

*Toolajian v. Air Methods Corp.*,
    2020 U.S. Dist. LEXIS 250904 (N.D. Cal. Apr. 24, 2020) ................................................... 13

*Wong v. Arlo Techs.*,
    2021 U.S. Dist. LEXIS 58514 (N.D. Cal. Mar. 25, 2021) ............................................... 7, 12

**State Cases**

*Gutierrez v. Brand Energy Services of California, Inc.*,
    50 Cal.App.5th 786 (2020) ............................................................................................ 8, 9, 10

**State Statutes**

California Labor Code
    § 203 ......................................................................................................................................... 8

**Rules**

Federal Rules of Civil Procedure,
    Rule 23 ......................................................................................................................... 2, 6, 7, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Frank Sica and Gary Ellis ("Plaintiffs" or "Class Representatives") request that this Court grant final approval of the class settlement reached between Plaintiffs and Construction & Turnaround Services, L.L.C. ("Defendant" or "CTS").[1]  The Court granted preliminary approval of the proposed settlement and the Joint Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement") on August 18, 2021.[2]  Phoenix Settlement Administrators ("Phoenix"), the Court-approved Settlement Administrator, mailed the Notice of Class Action Settlement ("Notice") to the Class Members on September 16, 2021.[3]  Approximately 99% of the notices were mailed successfully.[4]  With two weeks to go before the November 1, 2021 deadline to opt-out of or object, no Class Member has opted-out or objected to the settlement.[5]  Accordingly, the Class has favorably responded to the proposed settlement.[6]

The Class Members' positive response reflects the monetary relief that the settlement provides.  To settle this action, Defendant is required to pay a Maximum Settlement Amount ("MSA") of $465,000, plus Defendant's share of payroll taxes.[7]  After subtracting the cost of administering the settlement, attorneys' fees and costs, and the named Plaintiffs' Incentive Awards and General Release payments, the Settlement Agreement provides an available Net Settlement Amount of at least $320,250 to be distributed in full to Settlement Class Members

---

[1] Federal Rule of Civil Procedure ("Rule") 23(e) (court approval required for proposed class settlement); *see also, e.g.*, *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 946 (9th Cir. 2011) ("*Bluetooth*").

[2] Dkt. 29 (the Court's August 18, 2021 Order Granting Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval"); Ex. A (the Settlement Agreement).

[3] Declaration of Taylor Mitzner of Phoenix Settlement Administrators submitted with this motion ("Phoenix Decl.") at ¶ 6.

[4] Phoenix Decl. at ¶¶ 7-8.

[5] Phoenix Decl. at ¶¶ 10-11.

[6] *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 172633, at *10 (N.D. Cal. Sep. 10, 2021) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the settlement] are favorable to the class members." (internal quotations, citations omitted), citing cases.

[7] Ex. A at §§ I.Q, III.K.

("SCMs").[8] There is no reversion to Defendant of any amount of the MSA.[9] Plaintiffs thus request that the Court grant final approval.

## II. BACKGROUND

### A. Factual Background and Procedural History

CTS employs hourly union workers who work on-site at its clients' oil refineries and other industrial plants in California and other states.[10] Plaintiff Sica worked for CTS as an hourly-paid union pipefitter at the Chevron refinery in Richmond, California from December 4, 2018 through March 10, 2019.[11] Plaintiff Ellis worked for CTS as an hourly-paid union pipefitter at the Chevron refinery in Richmond, California from January 2018 through March 2018.[12]

Plaintiffs filed the operative First Amended Complaint ("FAC") on January 27, 2021.[13] In the FAC, Plaintiffs assert that CTS failed to pay at least the minimum wage for all pre-shift and post-shift time worked, provide timely, off-duty 30-minute meal periods, and pay all wages due upon termination.[14] Defendant has vigorously denied all of the allegations in their entirety.[15] To date, no court has found any wrongdoing on the part of CTS or that it otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues in the litigation.[16]

In an effort to avoid the risk and expense of lengthy litigation, the parties agreed to attend private mediation relatively early in the course of this action.[17]

### B. The Settlement Process

Prior to filing the action, Class Counsel investigated Plaintiffs' legal claims and factual circumstances. The investigation and informal discovery provided Class Counsel with relevant

---

[8] Ex. A at §§ I.R, I.FF, and III.K.2.a; *see*, §§ I.D, I.H, III.K.
[9] Ex. A at §§ I.Q; III.K.
[10] Dkt. 15 at ¶¶ 6, 9-10.
[11] Dkt. 15 at ¶ 4; Grover Decl. at ¶ 6.
[12] Dkt. 15 at ¶ 5; Grover Decl. at ¶ 6.
[13] Dkt. 15; Grover Decl. at ¶ 9.
[14] Dkt. 15 at ¶¶ 6-60.
[15] Grover Decl. at ¶ 8; Ex. A at § II.D.
[16] Grover Decl. at ¶ 8.
[17] Grover Decl. at ¶ 10; Ex. A at § II.B.

information regarding the legal and factual issues affecting the class claims in this case.[18]

In preparation for mediation, the parties exchanged information necessary to provide each other with a thorough understanding of their respective legal theories and defenses and to engage in productive settlement negotiations.[19] On June 15, 2021, the parties participated in an all-day mediation session with Mark LeHocky, Esq.[20] Through the mediation, the parties agreed to settle the entire action, subject to the Court's approval.[21] All terms of the parties' settlement are set forth in the Settlement Agreement.[22]

### C. Preliminary Approval, the Notice Process, and Class Members' Responses

The Court preliminarily approved the settlement terms set forth in the Settlement Agreement on August 18, 2021.[23] "Class Members" are defined as "all current and former hourly non-exempt unionized on-site employees who worked for Defendant in California during the Class Period."[24] The Class Period is October 26, 2016 through January 31, 2020, inclusive.[25]

Defendant identified 745 Class Members and Defendant provided the necessary relevant information about the Class Members to the Settlement Administrator.[26] On September 16, 2021, Phoenix mailed the Court-approved Notices via U.S. mail to 745 Class Members.[27]

To date, 30 of the Notices were returned to Phoenix by the Post Office. Two had forwarding addresses, which Phoenix used to resend the Notice. For the other 28 returned Notices, Phoenix located updated addresses and remailed 24 of those Notices. Only six Notices remain undeliverable. Thus, the Notice mailing had a 99% success rate.[28]

---

[18] Grover Decl. at ¶¶ 11-14.
[19] Ex. A at § II.B; Grover Decl. at ¶¶ 13-14.
[20] Ex. A at § II.B; Grover Decl. at ¶ 15.
[21] Ex. A at § II.B; Grover Decl. at ¶ 15.
[22] *See generally*, Ex. A; Grover Decl. at ¶ 15.
[23] Dkt. 29; *see also*, Dkt. 26 (Plaintiffs' July 27, 2021 motion for preliminary approval).
[24] Dkt. 29 at ¶ 2.
[25] Ex. A at § I.G.
[26] Phoenix Decl. at ¶ 3; Grover Decl. at ¶¶ 14, 24.
[27] Phoenix Decl. at ¶¶ 5-6; Grover Decl. at ¶ 24.
[28] Phoenix Decl. at ¶¶ 7-8.

Class Members do not have to file a claim to participate in the settlement.[29] All Class Members have 45 days from the date Phoenix initially mailed the Class Notices, to opt out of or object to the settlement.[30] The Response Deadline is November 1, 2021.[31] As of the filing of this motion, Phoenix has received no opt outs or objections.[32]

The Settlement Agreement also provides Class Members the opportunity to dispute the number of Qualified Hours on which his or her Individual Settlement Payment amount is based.[33] Phoenix has received no disputes.[34]

On September 17, 2021, counsel for Defendant filed a declaration attesting to sending out the required CAFA notices.[35]

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Benefits

The settlement provides that Defendant will fund the MSA in the amount of $465,000 plus Defendant's share of payroll taxes.[36] After subtracting out the amounts allocated to Class Counsel's award of fees and costs, the Class Representative Incentive Awards and General Release Payments, and the settlement administration costs, the remaining funds, referred to as the Net Settlement Amount, will be distributed in full to the SCMs, defined as Class Members who do not submit a valid, timely request for exclusion.[37] Defendant has no revisionary interest in the MSA.[38]

---

[29] Ex. A at § III.K.2.a.
[30] Phoenix Decl. at ¶¶ 6-7; *see* Ex. A at § I.CC.
[31] Phoenix Decl. at ¶ 7; *see* Ex. A at § I.CC.
[32] Phoenix Decl. at ¶¶ 10-11.
[33] Ex. A at § III.J.5.
[34] Phoenix Decl. at ¶ 9.
[35] Dkt. 30.
[36] Ex. A at §§ I.Q, III.K.
[37] Ex. A at §§ I.R, I.FF, and III.K.2.a; *see*, §§ I.D, I.H, III.K.; Grover Decl. at ¶ 31. *See* Phoenix Decl. at ¶ 12, Ex. B (total settlement administration fees are $8,000).
[38] Ex. A at §§ I.Q; III.K.

### B. Payments to Settlement Class Members

The settlement provides that SCMs will receive Individual Settlement Payments without the need to submit a claim form.[39] Each SCM's Individual Settlement Payment will be calculated in the manner set forth in Section K.2.1.a of the Settlement Agreement.[40] No gross Individual Settlement Payment will be less than $25.[41] Phoenix has calculated that highest estimated payment amount is $3,363.63 and the average estimated payment amount is $429.87.[42]

### C. Cy Pres Distribution

The *cy pres* doctrine allows for unclaimed portions of a class action settlement fund to be distributed in a manner that still indirectly benefits the class.[43] Unclaimed settlement funds should be put to their "next best" use in light of "in light of the objectives of the underlying statutes and the interests of the silent class members."[44] Here, the parties have agreed that, subject to the Court's approval, any unclaimed funds will be distributed to their selected *cy pres* recipient, Legal Aid at Work, which is a 501(c)(3) organization that provides low-wage workers with legal representation, education and policy advocacy to enforce and strengthen workers' rights. (https://legalaidatwork.org).[45] None of the parties' counsel has any relationship to Legal Aid at Work.[46] Legal Aid at Work is the "next best" use to giving the funds to class members as it is related to the lawsuit's subject matter and the class.[47]

### D. Limited Release Applicable to Settlement Class Members

The Settlement Agreement provides a Limited Release applicable to the SCMs.[48] The

---

[39] Ex. A at § III.K.2.a.

[40] Ex. A at § III.K.2.a.1; *see*, § I.Z.

[41] Ex. A at § III.K.2.a.1; *see*, §§ I.P, I.X and I.Z.

[42] Phoenix Decl. at ¶ 4.

[43] *Romero v. Perryman (In re Easysaver Rewards Litig.)*, 906 F.3d 747, 761 (9th Cir. 2018).

[44] *Id.* (internal quotations and citation omitted).

[45] Ex. A at § III.K.2.d; Grover Decl. at ¶ 47.

[46] Grover Decl. at ¶ 47.

[47] *See In re Easysaver Rewards Litig.*, 906 F.3d at 761. *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855-HSG, 2020 U.S. Dist. LEXIS 132712, at *22-23 (N.D. Cal. July 27, 2020).

[48] Ex. A at § III.B, *see also*, §§ I.AA, I.BB (defining the Released Parties).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Released Claims are set forth in Section I.AA of the Settlement Agreement.[49] The Release Period for the Released Claims shall be the same as the Class Period, *i.e.*, from October 26, 2016 through January 31, 2020, inclusive.[50]

### E. The General Releases by Plaintiffs Sica and Ellis

Plaintiffs Sica and Ellis will provide a General Release of their individual claims against the Released Parties in exchange for a General Release Payment, which is included in each Plaintiff's Class Representative Incentive Award.[51] The Class Representative Incentive Awards and General Release Payments are in addition to each named Plaintiff's Individual Settlement Payment.[52]

## IV.   LEGAL ARGUMENT

Rule 23(e) requires court approval of a proposed class settlement and that adequate notice of the settlement be provided to the class.[53] Rule 23(e) requires courts to approve any proposed class settlement to ensure that it "is 'fair, reasonable, and adequate,'" to protect absent class members' interests "while also accounting 'for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"[54] Under Rule 23(e)(2), courts must consider certain factors when assessing a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats

---

[49] Ex. A at § I.AA.

[50] Ex. A at § I.AA.

[51] Ex. A at § III.C, III.K.3; *see also*, § I.H; Grover Decl. at ¶¶ 48-51.

[52] Ex. A at §§ I.H, III.K.3.

[53] Rule 23(e). *See e.g.*, *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855-HSG, 2021 U.S. Dist. LEXIS 4043, at *11 (N.D. Cal. Jan. 8, 2021) ("*Morrison II*"), citing Rule 23(e) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

[54] *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020), quoting Rule 23(e)(2) and *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc).

class members equitably relative to each other.[55]

As the Rule 23(e) factors were "not intended to displace any factors" that courts previously considered,[56] district courts assessing fairness, reasonableness and adequacy of a class settlement continue to weigh some or all of the following factors, depending on their relevancy to the case:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; … and (8) the reaction of the class members of the proposed settlement.[57]

Courts also must ensure that there are none of the *Bluetooth* signs of collusion, *i.e.*, no "clear sailing" agreement, no reverter clause, and allows a reasonable fee award to 25% of the MSA that is not a disproportionate distribution.[58]

### A.  The Notice was the Best Practicable Notice Under the Circumstances

Rule 23(c)(2) requires that the class members receive "the best notice practicable under the circumstances."[59] Procedural due process requires that affected parties have the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[60] "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

---

[55] Rule 23(e)(2); *see Briseño v. Henderson*, 998 F.3d 1014, 1023-24 (9th Cir. 2021), citing Rule 23(e)(2).

[56] *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 U.S. Dist. LEXIS 84437, at *22 (N.D. Cal. May 3, 2021), citing Rule 23(e) Advisory Comm. Note to 2018 amendment.

[57] *Bluetooth*, 654 F.3d at 946 (internal quotations, citation omitted); *Briseño*, 998 F.3d at 1023 (listing same factors).

[58] *Bluetooth*, 654 F.3d at 943, 947-49; *see e.g.*, *Wong v. Arlo Techs.*, No. 5:19-cv-00372-BLF, 2021 U.S. Dist. LEXIS 58514, at *24-25 (N.D. Cal. Mar. 25, 2021) (fee award within the Ninth Circuit's range was not disproportionate).

[59] Rule 23(c)(2); *see also*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

[60] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

with adverse viewpoints to investigate and to come forward and be heard.'"[61]

On August 18, 2021, the Court approved the Notice and notice procedure and authorized its distribution to the class.[62] Pursuant to the Preliminary Order, Phoenix mailed out the Court-approved Notice to the Class Members.[63] Ultimately, only six out of 745 Notices were undeliverable – a 99% success rate.[64]

The notice approved by the Court at the preliminary approval stage was the best notice practicable under the circumstances and fairly apprised Class Members of the proposed settlement terms and their options.

### B. The Settlement is Fair, Reasonable, and Adequate

In the Preliminary Approval Order, the Court made the initial determination that the settlement was fair, reasonable and adequate.[65] Confirmation of that finding for final approval is warranted.

#### 1. The strength of Plaintiffs' case supports final approval.

Fairness of the settlement is further demonstrated by the uncertainty and risks to the Plaintiffs involved both in not prevailing on one or more causes of action alleged in the complaint and in non-certification.[66] Defendant has raised what it considers to be substantial defenses to many of Plaintiffs' claims and hurdles to class certification.[67] Defendant argues, for example, Plaintiffs must prove willfulness to succeed on the liquidated damage and Labor Code § 203 claims, and that, before a 2020 California appellate court decision, Defendant was uncertain whether the pre-shift time at issue in this case was compensable, defeating willfulness.[68] Defendant also argues that it is exempt from Plaintiffs' meal period claims due to collective

---

[61] *Churchill Village*, 361 F.3d at 575.
[62] Dkt. 29 at ¶¶ 8-11.
[63] Phoenix Decl. at ¶¶ 4-6.
[64] Phoenix Decl. at ¶¶ 7-8.
[65] *See* Dkt. 29.
[66] *See* Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶¶ 18-22).
[67] *See id.*
[68] *Id.* at ¶ 21; *Gutierrez v. Brand Energy Services of California, Inc.*, 50 Cal.App.5th 786 (2020).

bargaining agreements that cover all Class Members during the Class Period.[69]

While Plaintiffs and their Counsel disagree and believe that the claims can be successfully proved on a class basis, Plaintiffs recognize that there is a risk that the Court may deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns. Were the class not certified, it is unlikely that any putative Class Members would maintain individual actions against Defendant given the relatively small individual recoveries at stake.[70]

Although believing Plaintiffs' case to be strong, Plaintiffs' Counsel considered all of those issues when concluding that the Class Members' recovery through the settlement was fair.

### 2. The complexity, expense and likely duration of continued litigation weighs in favor of final approval.

Employment class action cases are expensive and time-consuming to prosecute. Continued litigation of this action against Defendant would likely be complex and expensive, due to subject matter, the size of the class and the nature of the claims. If the parties had not reached a settlement, Plaintiffs still would have to litigate class certification, establish class-wide liability, and then prove up various issues regarding damages.[71] Such efforts would likely take a substantial amount of time, and necessitate expert witness testimony, as well as other costs, risks, and potential delays.[72] Appellate proceedings could further delay and jeopardize recovery.[73] By contrast, the settlement ensures timely relief and substantial recovery of the amounts Plaintiffs contend are owed to the proposed Settlement Class.[74]

Furthermore, the settlement avoids the need for a contested class certification motion that would be time consuming and costly for Plaintiffs to file, Defendant to oppose, and the Court to decide. Also, if the Court were to deny such a motion for class certification, Class Members

---

[69] *See* Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶ 22).

[70] *Id.*

[71] Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶¶ 17-22, 35-36).

[72] *See id.*

[73] *See id.*

[74] *Id.*

would be left without a group remedy, and the issues presented here would need to be litigated individually in a piecemeal, costly, and time-consuming fashion. The settlement also avoids a lengthy trial or trials that likely would involve testimony by numerous witnesses and experts.[75]

### 3. The value of the settlement favors final approval.

Under the settlement, Defendant has agreed to pay $465,000, plus Defendant's share of the payroll taxes.[76] The settlement provides a good result for Class Members in terms of a cash settlement payable in one payment and paid not long after the commencement of the litigation. The settlement is enhanced by the lack of non-cash benefits to the settlement such as paid time off or coupons.[77] The amounts for which Class Members are eligible are not only in-line with other similar settlements, but also commensurate with the value of the claim adjusted for risk.[78] Phoenix has calculated that highest estimated individual payment amount is $3,363.63 and the average estimated individual payment amount is $429.87.[79]

### 4. Disclosure of documents and data demonstrating the strengths and weaknesses of this action was completed prior to entering into the settlement.

Settlement was achieved only after the parties exchanged substantive information through informal discovery, as well as apprised each other of their respective factual contentions, legal theories, and defenses.[80] Prior to mediation, Defendant produced information and documents regarding its corporate policies and practices regarding wages and meal periods, the number of employees who worked in California during the relevant time periods, and shifts and hours worked, among other items.[81] Through their independent investigation, informal discovery, and information exchanged at the mediation, Class Counsel "obtained sufficient information to make

---

[75] Grover Decl. at ¶¶ 30, 36-37; Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶¶ 17-22, 35-36).
[76] Ex. A at § III.K.
[77] See id.
[78] Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶¶ 17-22, 25-36).
[79] Phoenix Decl. at ¶ 4.
[80] Grover Decl. at ¶¶ 11-15, 30; Dkt. 26-1 (July 27, 2021 Grover Declaration at ¶ 34).
[81] Grover Decl. at ¶¶ 12-14.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

an informed decision about the settlement and about the legal and factual risks of the case."[82]

The parties engaged in extensive good-faith, arms-length negotiations. On June 15, 2021 the parties participated in a full-day mediation session with Mark LeHockey, Esq., a well-respected mediator with experience mediating wage and hour class actions.[83] A settlement was reached that day, after a full day of negotiations, with the assistance of Mr. LeHockey.[84]

### 5. The experience and views of Class Counsel favor final approval.

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight.[85] This is because parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."[86] "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"[87]

Class Counsel believes this settlement to be an excellent result for the Class Members.[88] Class Counsel has significant experience in complex employment class litigation, including actions involving unpaid wage and noncompliant meal period claims.[89] Class Counsel is of the

---

[82] *Perks v. ActiveHours, Inc.,* No. 5:19-cv-05543-BLF, 2021 U.S. Dist. LEXIS 57272, at *13 (N.D. Cal. Mar. 25, 2021) (approving class settlement at relatively early stage of the litigation); *see also*, *e.g.*, *Taafua v. Quantum Glob. Techs., LLC*, No. 18-cv-06602-VKD, 2021 U.S. Dist. LEXIS 28754, at *19 (N.D. Cal. Feb. 16, 2021) (similar, finding that class counsel "had sufficient information to properly evaluate the merits of the claims and to make an informed decision about settlement."); Grover Decl. at ¶¶ 11-15, 30.

[83] Grover Decl. at ¶ 15.

[84] Ex. A at § II.B; Grover Decl. at ¶ 15. *See Hanlon*, 150 F.3d at 1027 (affirming approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

[85] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[86] *Id.* (internal quotations and citation omitted).

[87] *Id.* (citations omitted); *see also*, *Officers for Justice*, 688 F.2d at 625 (a court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.").

[88] Grover Decl. at ¶¶ 30-38; *see* Dkt. 26-1 (July 27, 2021 Grover Decl. at ¶¶ 17-36).

[89] Grover Decl. at ¶¶ 2-4, 30, 57-60, 68; Declaration of Scot D. Bernstein Decl. submitted with this motion at ¶ 2, Ex. 1.

opinion that the settlement is fair, adequate, reasonable, and in the best interest of the Class Members.[90]

### 6. Class Members' positive reaction favors final approval.

Finally, courts look at the reaction of class members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable. Of most importance is the fact that, as of the filing of this motion, not a single Class Member objected to the settlement.[91] "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."[92] Moreover, if no Class Member timely opts out, 745 Class Members will receive settlement payments.[93] The Court should construe the overwhelming non-opposition to and participation in the settlement as strong indications of Class Members' support for the settlement as fair, adequate, and reasonable.

### 7. None of the *Bluetooth* signs of collusion are present.

The settlement has none of the *Bluetooth* signs of collusion.[94] The settlement permits Class Counsel to seek attorneys' fees amounting to 25% of the MSA, which is the Ninth Circuit benchmark,[95] and actual litigation costs and expenses.[96] Courts have found that, when a settlement allows a fee request within the Ninth Circuit's range, there is not a disproportionate distribution to Class Counsel.[97] The Net Settlement Amount is estimated to be at least $320,250

---

[90] Grover Decl. at ¶¶ 30-38; *see also*, Dkt. 26-1 (July 27, 2021 Grover Decl. at ¶¶ 17-36).

[91] Phoenix Decl. at ¶ 11.

[92] *Moreno*, 2021 U.S. Dist. LEXIS 172633, at *10 (N.D. Cal. Sep. 10, 2021) (internal quotations, citations omitted), citing *Churchill Village*, 361 F.3d at 577, among other cases.

[93] *See* Phoenix Decl. at ¶ 4.

[94] *Briseño*, 998 F.3d at 1025-28, citing *Bluetooth*, 654 F.3d at 947-49.

[95] *Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."); *Morrison II*, 2021 U.S. Dist. LEXIS 4043, at *18-19, citing same.

[96] Ex. A. at § III.K.4.a.

[97] *E.g.*, *Perez v. CVS Health Corp.*, No. 1:19-cv-00449-DAD-BAM, 2021 U.S. Dist. LEXIS 110216, at *25 (E.D. Cal. June 11, 2021) (finding no disproportionate distribution as the 33.33% fee request was within the Ninth Circuit's accepted range); *Wong*, 2021 U.S. Dist. LEXIS 58514, at *24 (same as to 25% fee request). *See*, *Bluetooth*, 654 F.3d at 943 (noting 25% is benchmark).

and will be paid out in full to the SCMs, who are not required to submit claims.[98] Thus, the settlement ensures that SCMs will receive a substantial share of the MSA and Class Counsel will not receive a disproportionate share.[99]

The settlement does not provide that any unused or unawarded funds will revert to Defendant.[100] If the Court does not award the full amounts requested for attorneys' fee and costs or Class Representative Incentive Awards and General Release Payments, the unawarded funds become part of the Net Settlement Amount.[101] If the Court does not award the full amounts requested, the settlement provides that Plaintiffs and Class Counsel "shall not have the right to modify or revoke the settlement, and the settlement will remain binding," and Plaintiffs or Class Counsel may not seek, request, or demand an increase in the MSA on that basis."[102] Further, any funds from Individual Settlement Payment checks that remain uncashed 180 days after the issuance date will be distributed to the selected *cy pres* beneficiary.[103]

Further, the settlement does not include a clear sailing arrangement.[104] Defendant has not agreed to refrain from challenging Class Counsel's fee motion.

8. <u>The settlement has no obvious deficiencies.</u>

The settlement does not grant preferential treatment to Plaintiffs or any segment of the Class. SCMs will receive payments based on their pro-rata share of the total Qualified Hours, making the distribution fair.[105]

The settlement allows Plaintiff Sica and Plaintiff Ellis to seek Incentive Awards and General Release Payments of up to $5,000 each, which they are doing through the Fee Motion.[106]

---

[98] Grover Decl. at ¶ 31; Ex. A at §§ I.R, III.K.2.a.

[99] *Contrast Briseño*, 998 F.3d at 1018, in which class counsel received more than seven times what the class members receive in the claims-made settlement.

[100] *See* Ex. A at §§ III.L, I.W. *See Briseño*, 998 F.3d at 1027.

[101] Ex. A at §§ III.K.3.b. and III.K.4.c.

[102] Ex. A at §§ III.K.3.d and III.K.4.b.

[103] Ex. A at § III.K.2.d.

[104] *See generally*, Ex. A.

[105] Ex. A at § III.K.2. *See e.g.*, *Toolajian v. Air Methods Corp.*, No. 18-cv-06722-AGT, 2020 U.S. Dist. LEXIS 250904, at *26 (N.D. Cal. Apr. 24, 2020).

[106] *See* Ex. A at § III.K.3.

Incentive awards are "fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."[107] "In wage and hour cases, many courts in this district have held that a $5,000 incentive award is 'presumptively reasonable,'"[108] especially when, as here, "the parties agree that the settlement shall remain in force regardless of any incentive award."[109] As discussed in the Fee Motion, Plaintiffs have spent time and effort prosecuting this action against their former employer on the Class' behalf, making the Incentive Awards reasonable.[110]

The settlement also provides that the named Plaintiffs will enter into a General Release in exchange for payment that is included with the Incentive Award amount.[111] The General Release does not apply to the SCMs.[112] The Incentive Awards and General Release Payments are not preferential treatment because the SCMs will not be subject to or affected by the General Release.

For all of the reasons stated above, the settlement is fair, reasonable and adequate.

### C. The Settlement Class Meets the Rule 23 Class Certification Requirements

In the preliminary approval order, the Court conditionally held that, for settlement purposes, the Settlement Class satisfies the class certification criteria of Federal Rule 23 for settlement purposes only.[113] Because none of the facts have changed since preliminary approval, for brevity, Plaintiffs do not repeat their arguments in favor of class certification here, but request that, in the final approval order, the Court confirm its certification of the Settlement Class for settlement purposes only.

---

[107] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

[108] *Morrison II*, 2021 U.S. Dist. LEXIS 4043, at *24, citing cases.

[109] *Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *34-35 (C.D. Cal. June 21, 2019), citing *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). See Ex. A at § III.K.3.b.

[110] Grover Decl. at ¶¶ 48-51. Plaintiffs Sica and Ellis have submitted declarations with the Fee Motion.

[111] *See* Ex. A at § III.K.3.

[112] *See id.*

[113] Dkt. 29 at ¶ 2.

## V. CONCLUSION

For all of the reasons discussed above, the proposed class settlement is fair, reasonable, and adequate, as this Court initially determined in granting preliminary approval. The proposed settlement will result in substantial benefits to Class Members and was achieved as the result of informed, non-collusive and arm's length negotiations conducted by experienced counsel after a full day of mediation with a well-respected mediator. For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the parties' class action settlement and enter the proposed order submitted herewith which addresses final approval of the settlement and the requests made in the Fee Motion that is being filed concurrently with this motion.

Dated:  October 18, 2021                **KELLER GROVER LLP**

By: */s/ Eric A. Grover*
ERIC A. GROVER
ROBERT SPENCER
*Attorneys for Plaintiffs*